*THE STATE *v.* ZACK MCFARLAND.

WYLY, J., *dissenting.* In January, 1873, the defendant, Zack McFarland, was indicted for murder. He was arrested by the sheriff of the parish of Caddo, and on the fifteenth day of March he applied to the District Judge of said parish for a writ of habeas corpus, alleging in his petition that he had been indicted for murder; had been arrested by the sheriff, and was lodged in jail. He also averred that he was not guilty of the crime charged, but at the time he shot the said Aleck (James Alexander) the said Aleck was then and there in the act of killing and murdering his (petitioner's) brother, and that petitioner shot and killed the said Aleck to prevent the killing of his brother aforesaid. He further alleged that he had no preliminary examination and no opportunity to vindicate his innocence, and that his imprisonment was illegal and unjust. The court granted the writ, tried the case, and on nineteenth March, 1873, finding that the accused was entitled to bail, " ordered that he be released from custody upon giving bond with good security in the sum of three thousand dollars,. conditioned according to law, and the sheriff or any deputy be authorized to take and approve said bond."

On the same day, to wit: Nineteenth March, 1873, the accused gave· the required bond in favor of the Governor of the State of Louisiana for $3000, with A. H. Leonard, John W. Lawton and John Lake as, sureties. This bond was approved by the District Judge.

On the third day of June, 1873, the bond was duly forfeited and judgment was rendered against the principal and his securities *in solido* for the amount thereof, $3000. The sureties then moved to set aside· the judgment on the following grounds :

*First*—There was no indictment against McFarland that he was. legally bound to answer, because it was not found by a legal grand jury ; consequently there was no warrant for his arrest, and his detention and imprisonment were illegal.

*Second*—If the indictment be valid, McFarland was not legally bound to appear before the court at this term, because the law prohibits him from recognizing usurpers in office, and because the offices of clerk of said court and sheriff of said parish are now usurped by S. W. Morrison and J. W. Pickens, pretending to act without authority of an· election declared by a returning board constituted by law, and without authority of a commission from the Governor of the State.

*Third*—That the bond was not taken by any one legally authorized to take the same, and it is, therefore, null and void ; that the court was without authority to order Pickens or any one acting as deputy for

---

* The omission by the clerk of the court at Monroe to send this dissenting opinion with, the record of the case, implied that there was none, and prevented its being published in the proper place. See page 547.

him to take the bond of said McFarland, and they were without authority and prohibited by law from so doing, or performing any other act as sheriff.

They also allege that no judgment can be taken on the bond or any other action be taken at this term of the District Court, because the clerk and sheriff are without authority to act as aforesaid. Considerable testimony was adduced for and against the rule or motion; the court, however, overruled it, and Leonard, Lawton and Lake, the sureties on the bond have appealed. Morrison and Pickens, the clerk and sheriff, were both commissioned by H. C. Warmoth, Governor, on the fourth day of December, 1872, and it is "admitted that these officers have taken the necessary oaths of office and filed their bonds in accordance with law." It is also "admitted that J. W. Pickens obtained peaceable possession of the office of sheriff of Caddo parish on the twenty-third of December, 1872, and on that day entered peaceably on the duties of said office, and has been continuously in possession thereof ever since, discharging the duties of said office."

It is proved that S. W. Morrison has been the acting clerk of the Tenth District Court since twenty-third of December, 1872, and has continued in the open, undisturbed and continuous discharge of the duties of said office ever since. Also that his immediate predecessor, Samuel C. Wright, voluntarily delivered to him possession of the clerk's office, the books, records, etc.

The question is, are the official acts of the officers valid? Are they binding as to third persons, or are they absolute nullities? Did the commissions, the oaths, the bonds, and the open, peaceable and undisturbed possession of these offices since twenty-third of December, 1872, give the sheriff and clerk of the parish of Caddo a color of title to their offices, the standing of *de facto* officers rendering their official acts valid? Under the settled jurisprudence of this State these questions must be answered in the affirmative. This is the jurisprudence of other States of the Union, and also of England. Buckham *v.* Ruggles, 15 Mass. 183; Mason *v.* Dillingham, 15 Mass. 171; McInstry *v.* Tanner, 9 Johnson 135; 3 Abbot's Digest 352, sections 63, 64, 65, 66, 67, 68; United States Dig. (new series) vol. 2, 1871, page 519, section 23; 3 An. 633; 10 An. 524; 13 An. 607; 22 An. 33; 16 Peters 71; 13 An. 404.

In the Citizens' Bank *v.* Bry et al., 3. An. 631, it was held that "the acts of an officer *de facto* in the exercise of the ordinary functions of his office are valid in respect to the rights of third persons who may be interested in such acts."

In the State *v.* Gilbert, 10 An. 524, a case directly in point, where the sureties of Gilbert opposed the forfeiture of his bond on the ground that "William H. Dinkgrave, who acted in taking said bond as sheriff, was not sheriff at the time he took said bond, never having taken the

.oath nor given bond as required by law, and being ineligible under the .constitution to act as sheriff," this court held that: "There is no weight in the position that Dinkgrave was not sheriff *de jure*. Conceding that he was not, it is shown that he was the sheriff, and the only sheriff *de facto*, under color of title, and his official acts as such are not .absolute nullities, but must be held good in controversies between third persons."

In Cash *v.* Whitworth, 13 An. 404, it was held that: "The objection urged by the plaintiffs to the mode of choosing the Third Swamp Land Commissioner can not avail them. He is an officer of the State *de facto*, acting under color of legal authority, and he is not a party to this suit. To declare his acts null and void by a side-long judgment in a suit between third persons, would be contrary to reason as well as to precedent."

In Miahle *v.* Fornet, 13 An. 607, it was held that: "When a warrant is drawn by those who are *de facto* directors of a public school of a particular district, the treasurer can not set up as a defense that the .directors were not elected and had not qualified as directors."

In the State *v.* Lewis, 22 An. 33, the objection was raised that N. J. .Scott, before whom the case was tried, was not Parish Judge; in disposing of this objection this court used the following language:

"It appears that N. J. Scott performs the duties of the office of Parish Judge of the parish of Claiborne. His capacity and right to perform these duties can not be inquired into collaterally."

This has frequently been decided by this court, and in all the cases heretofore presented a different ruling has been made. Here the sureties on the bond of the defendant seek to escape liability on the ground that Morrison and Pickens were not clerk and sheriff. They attack the title of these officers collaterally, and in a proceeding in which they are not parties, contrary to the well settled jurisprudence of this State. To decide in this collateral manner that Morrison and Pickens are not clerk and sheriff would be to determine their rights without giving them a hearing or any opportunity of making a defense. No one should be condemned without a hearing, nor deprived of a legal right without due process of law. Besides, the right to an office can not be inquired into in this State, except in a proceeding under the intrusion act or in a suit to contest an election. The question can not be raised by a mandamus or in any other way, as has frequently been decided by this court. State ex rel. Sternberg *v.* Lagarde, 21 An. 18; State ex rel. Hero *v.* A. Pitot, 21 An. 336, and other subsequent decisions.

In State ex rel. Viene *v.* Hyams, 12 An. 719, where the relator, who was commissioned sheriff of the parish of Natchitoches, sued out a mandamus to compel Hyams, who detained the keys of the Parish

Prison, to deliver them to him, and where the respondent denied, in his answer, that the relator was legally elected sheriff, and claimed the right to hold over under his former commission until a successor could be legally elected, this court held : "That the act of 1846 prescribes the mode of proceeding in contesting the election of a sheriff. The Supreme Court is not the tribunal to entertain such a contest, and can not go behind the commission to examine the proof upon which the Governor acted in issuing it."

This was also decided in State ex rel. Bienvenu v. Wrotnowski, 17 An. 156, and in several later decisions. Now, if the court could not go behind the commission to examine the proof upon which the Governor acted in issuing it, in the case against Hyams, 12 An. 719, where the parties in interest were before the court, how can the court look behind the commissions of Governor Warmoth issued to Morrison and Pickens on fourth December, 1872, in this proceeding where the question is only presented collaterally, and where the parties whose title to the offices in question are not before the court ?

If Morrison and Pickens, who went peaceably into possession of their offices under commissions from the Governor, and who are admitted to have qualified and given bond according to law, are not, at least' acting *de facto* officers, under color of title, there never has been a *de facto* officer in this State.

In my opinion the decree which declares all their official acts absolute nullities, flatly overrules the well settled jurisprudence of this State, practically defeats or destroys the titles of Morrison and Pickens to the offices of clerk and sheriff of the parish of Caddo, without giving them a hearing and an opportunity of making a defense.

It is the first time in the jurisprudence of this State that a title to an office has been successfully attacked collaterally, and it is the first time that a commissioned, qualified and bonded officer of this State has been held to be without title and a usurper, in a proceeding to which he was not a party.

But it is urged that the court is compelled to disregard the well settled jurisprudence of this State, to which I have alluded, because of the passage of act No. 41, approved fifth March, 1873. The title of this act is : "An act declaring it a crime to usurp a public office, and providing the punishment for such offense ; providing that if any public officer shall adhere to or recognize any usurper, his office shall be forfeited and considered abandoned, and directing and regulating legal proceedings to have such abandonment and forfeiture declared ; authorizing the Governor to declare such abandonment and forfeiture in certain cases, and to remove such officers and to fill the vacancy so made by appointment." Section one provides : "That if any person shall assume or pretend to be an officer of the State, executive, judicial or

The State v. McFarland.

legislative, without authority of an election declared by the returning board constituted by law, or without authority of a commission from the Governor of the State, in case the laws require such officer to be commissioned, such person so illegally assuming or pretending to be a public officer, shall be deemed a usurper. If any such usurper shall attempt to exercise the functions of a public officer, and shall interfere with any public officer in the discharge of his duties, such usurper so interfering shall be deemed guilty of a crime, and upon conviction may be fined and imprisoned at the discretion of the court, or both."

I find nothing in this section (and it is the only one bearing on the case) that in any manner alters our rules of practice, and compels this court to disregard that principle of universal jurisprudence which is, that no one should be deprived of a legal right in a proceeding to which he was not a party. Morrison and Pickens were not before the court, and in the statute before us there is no warrant whatever authorizing this court to decide they are usurpers, and all their official acts are absolute nullities. This court has only a limited appellate jurisdiction. It can not determine issues upon which the parties whose interest are affected, were not cited to trial in the court below.

The statute before us does not declare that Morrison and Pickens are usurpers. If it did, it would be unconstitutional, because it is a judicial question whether they are or not usurpers, and the authority to decide it belongs alone to the courts. This statute does not attempt to modify or in any manner alter the rules of practice by which civil and criminal cases are brought before the court; it simply makes it a criminal offense for any person not returned as elected by the lawful returning board, or not holding a commission from the Governor, to assume to be an officer and to interfere with any public officer in the discharge of his duties.

Now if Morrison and Pickens have done anything in contravention of this criminal law, inquiry concerning it can only be had by an indictment or information, according to the constitution of the State. And in order to convict them of the crime of usurpation, the facts presented to the court must bring them strictly within the provisions of the statute. Suppose the question was regularly presented by an indictment, and Morrison and Pickens were on trial for the crime of usurpation under the statute, would it not devolve on the State to show that these defendants not only usurped their offices, but also had interfered with some public officer in the discharge of his duties; also, that they assumed to be public officers without having been returned as elected by the lawful returning board, "or without authority of a commission from the Governor of the State?"

Morrison and Pickens do not fall within the provisions of this criminal statute, because they did not assume to be public officers without

the authority of a commission issued by the Governor of the State. They obtained peaceable possession of their offices, under the authority of commissions issued to them by H. C. Warmoth, Governor of the State, on the fourth day of December, 1872, and it is admitted that they took the required oath of office, and gave bond according to law.

Morrison and Pickens went into office on December 23, 1872, under the authority of commissions issued by the Governor, under the great seal of the State. They were in office, and were recognized by the district judge, long before the statute in question was passed, which was on the fifth day of March, 1873.

If the Legislature had desired to embrace these acting commissioned officers within the provisions of this criminal statute, they would have said so. They would have said, that if any person shall assume to be a public officer, and interfere with any lawful officer in the discharge of his duties, without having been declared elected by the lawful returning board, or without a commission issued by the Governor (not including the commissions issued by H. C. Warmoth, Governor, on the fourth day of December, 1872), such person shall be deemed a usurper, and punished, etc. Will this court extend the provisions of a criminal statute, and hold that officers acting under the authority of commissions issued by the Governor, are criminals, and are punishable under a law which only provides a penalty against persons assuming to be officers without commissions issued by the Governor, or without having been returned as elected by the legal returning board?

Suppose the Legislature had extended its provisions so as to cover the case of Morrison and Pickens, and declared it a crime for these commissioned, sworn, bonded, and recognized officers to continue to discharge the duties of their offices, would that part of the statute be valid and obligatory? Are acquired legal rights thus to be destroyed in the face of article 110 of the constitution, prohibiting the Legislature from passing retroactive laws? Is it competent for the Legislature to decide that Morrison and Pickens have no legal title to their offices in the face of that provision of the constitution conferring all the judicial powers of the State upon the courts? I think not. In the case of Downe v. Towne, 21 An., this court held that no man can be legislated out of office, and that a constitutional officer can only be removed by address or impeachment.

Morrison and Pickens hold constitutional offices; they held them before the criminal statute in question was passed. The validity of their titles is not a subject for legislative inquiry; it is a matter alone for the courts to determine. But it is urged that the Legislature has only made it a crime for these officers to continue to fill their office; this is virtually deciding that they have no titles to their offices, because the making it a crime for one to hold his property or his office

under titles acquired before the passage of the law, is the strongest decision that he has no titles. The Legislature could not make this decision, and they can not destroy acquired rights by the passage of a retroactive law. Constitution, article 110.

But the strongest objection I have to the ruling of the majority of the court in this case is, that by its decision the court virtually adds to or supplements this criminal statute, by adding, as a further penalty, that all the acts of these officers are absolute nullities. The law has not prescribed this penalty. This court has no authority to supply it. While the Legislature would have no authority, on the one hand, to exercise judicial power, deciding that officers holding under Governor Warmoth's commission of fourth of December, 1872, are usurpers, this court has no authority; on the other hand, to exercise legislative power, and to amend the criminal statute, No. 41, by providing as a further penalty for the crime of usurpation that all the official acts of such officers shall be absolute nullities. It is well for each department of the State to keep within its prescribed powers. And it is dangerous for one department to encroach upon the functions of the other. In prescribing the penalty for the crime of usurpation, if the Legislature had intended to inflict the further penalty that all their official acts shall be absolute nullities, they would have said so in the statute. It was their duty to have informed the people of it, in order that they might avoid, if possible, transacting business before the clerk and sheriff of the parish of Caddo.

In the parish of Caddo is the city of Shreveport, the second largest city of the State. The people of that parish, of this State, of other States, and of foreign countries, have, since the twenty-third of December, 1872, no doubt had much important business to transact in the clerk's and sheriff's offices, and also before the Parish and District Court, and no doubt several terms of the Parish Court. Citations have been served upon which it is perhaps relied to interrupt prescription in suits perhaps involving the entire fortunes of minors, married women and citizens of this State, of other States, and of foreign countries. Judgments have been enforced, sales have been made, criminals have been punished, and all manner of judicial business has been transacted. All this will be annulled, and the rights, perhaps, of thousands of innocent persons will be lost, as the result of the decision of this case. All these disastrous consequences must fall upon the people of Caddo and of other parts of the State, and also the people of other States, in order to punish the crime of usurpation under the statute of March 5, 1873, although that law will be searched in vain to find such a penalty.

In my opinion the case of Morrison and Pickens does not fall within the provisions of the statute No. 41, because it does not declare that a

person holding office under Governor Warmoth's commission of fourth of December, 1872, shall be deemed a usurper and punished as provided in the act. If the statute had denounced its penalty against officers holding such commissions, perhaps Morrison and Pickens would have abandoned these offices. It would be monstrous to convict Morrison and Pickens of the crime of usurpation under statute No. 41, because they have no commissions, when they actually hold commissions from the Governor. A law making it a crime to hold office without a commission ought not to be enforced against those who hold commissions from the Governor. I venture the assertion that there is no court in this State or in the civilized world that would convict Morrison or Pickens, in a criminal proceeding, of the crime of usurpation under statute No. 41.

If they be not usurpers in the meaning of that act (as I believe), no part of the penalty thereof should be applied by this court, assuming that the absolute nullity of all their official acts is a part of the penalty. Criminal law is always construed strictly; in a criminal statute there is no offense except that specially described as an offense, and there is no penalty except that expressly declared to be the penalty. The statute in question has not declared it to be a crime to hold an office under a commission from the Governor; it has not prescribed, as a penalty, that the official acts of such officer shall be absolute nullities. This court can not declare the crime and prescribe the penalty. It can only enforce criminal law in proceedings by indictment or information. Until the criminal act is legally ascertained, the court can not inflict any part of the penalty attached to said act or crime. If the nullity of the official acts of Morrison and Pickens be the result or the legal consequence of their having committed the crime announced in statute No. 41, that crime must be judicially established before the result or consequence or additional penalty can be inflicted.

It would be unreasonable and absurd to presume that Morrison and Pickens, in advance of a trial, are guilty of the crime announced in statute 41, and therefore a part of the penalty, or the legal sequence of the penalty, must now be inflicted. But what has the statute in question to do with this case, a civil proceeding to enforce a bond subscribed by the appellants? This statute only defines a crime and prescribes the penalty. It makes no change whatever of the forms of criminal or civil proceedings, the rules of practice, or the jurisprudence of this State. It authorizes no one to be condemned unheard. It does not presume that any one is guilty. It does not require the court to enforce any part of the penalty before the crime is judicially established. Here the appellants resist the payment of the obligation which they contracted when they signed the bond of Zack McFarland; and they place their sole defense on the ground that the commissioned,

sworn, bonded and recognized clerk and sheriff of the court were not holding under color of authority, were not *de facto* officers, therefore the bond and all other official acts of the court and of these officers are absolute nullities.

I think I have shown that this defense can not avail them, under the well settled jurisprudence of this State, and under the principles of universal jurisprudence. I think I have shown that the criminal statute No. 41 in no manner changes, or proposes to change, the jurisprudence of this State on the point in question; that it merely defines a crime, affixes the penalty, and leaves the rules of civil and criminal practice and the jurisprudence of this State untouched, and in no manner modified.

I have given this subject mature consideration, and my conviction is, that the judgment of this court is erroneous. I therefore dissent in this case.